UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INGE BERGE,<br><br>     Plaintiff,<br><br> v.<br><br>SCHOOL COMMITTEE OF GLOUCESTER; BEN LUMMIS, in his personal capacity; ROBERTA A. EASON, in her personal capacity; and STEPHANIE DELISI, in her personal capacity,<br><br>     Defendants. | Civil Action No. _____<br><br>**MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION**<br><br>**[REQUEST FOR ORAL ARGUMENT]** |

  Plaintiff Inge Berge brings this Motion for a Temporary Restraining Order and for a Preliminary Injunction against Defendants School Committee of Gloucester, Ben Lummis, Roberta A. Eason, and Stephanie Delisi from threatening or coercing Mr. Berge into removing his speech protected by the First Amendment.

  Mr. Berge believes that the issues are so clear cut that no oral argument should be necessary.

# MEMORANDUM OF REASONS

## 1.0 INTRODUCTION AND FACTUAL BACKGROUND

Inge Berge is a citizen journalist residing in Gloucester, Massachusetts who publicly discusses political issues, including Massachusetts and local governments' actions regarding COVID-19 restrictions. (Complaint at ¶ 7.) On March 3, 2022, Inge Berge entered the office of the Superintendent of Gloucester Public Schools, Ben Lummis. (*Id*. at ¶ 8.) He went there to discuss an issue wherein Gloucester Public Schools were limiting seating capacity at school events purportedly for the purpose of public safety, despite all statewide COVID-19 mandates in Massachusetts being lifted. (*Id*. at ¶ 8.) The Superintendent's office is a public building that is accessible to the general public. (*Id*. at ¶ 9.) When Mr. Berge entered the building, he was directed to Executive Secretary Stephanie Delisi and began to speak with her. (*Id*. at ¶ 10.) He began this conversation by stating "I'm filming this, I'm doing a story on it." . (*Id*. at ¶ 10.)

Gregg Bach, the Assistant Superintendent of Teaching & Learning, then approached Mr. Berge and spoke with him . (*Id*. at ¶ 11.) The two had a pleasant conversation, after which Mr. Berge left the building. (*Id*. at ¶ 11.)

Mr. Berge uploaded his recording of the above encounter to his publicly accessible Facebook page, where he publishes his commentary to hundreds of followers, adding commentary about the incident.[1] (*Id*. at ¶ 12.)

Also on the same day, Mr. Berge received a letter from Gloucester Public Schools signed by Roberta A. Eason, its Director of Human Resources. This letter claimed that Mr. Berge was in violation of the Massachusetts wiretapping statute, Mass. Gen. Laws ch. 272, § 99 (the "Wiretapping Law"), because he recorded his conversation with Delisi without her consent and uploaded the video to Facebook. The letter concludes with a demand that Mr. Berge "immediately remove the post from your Facebook account and/or any other communications to prevent the pursuit of legal in this matter." (*See* Demand letter from Gloucester Public Schools, attached as **Exhibit 1**.)

---

[1] Available at: https://www.facebook.com/inge.berge.9/videos/1571702173204109.

## 2.0 LEGAL STANDARDS

A district court must consider four factors in deciding whether to grant a temporary restraining order or preliminary injunction: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant is enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Charlesbank equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). The plaintiff has the burden of establishing these four factors weigh in their favor. *Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006).

## 3.0 LEGAL ARGUMENT

### 3.1 Mr. Berge Has Standing

"To qualify as a party with standing to litigate, a person must show, first and foremost, an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). In the First Amendment context in particular, a plaintiff has standing to sue if a challenged statute or regulation operates to "chill" the plaintiff's exercise of their First Amendment rights. *Doe v. Bolton*, 410 U.S. 179, 188 (1973).

Here, Mr. Berge's harm is readily apparent. He has been threatened with criminal prosecution and civil litigation in retaliation for engaging in conduct protected under the First Amendment. This creates a true case and controversy sufficient to confer Article III standing, and Mr. Berge has standing.

### 3.2 Likelihood of Success on the Merits

In seeking a preliminary injunction, the plaintiff has the burden to show the state action infringes on their First Amendment rights, at which point the state must then justify its actions. *Comcast of Maine/New Hampshire, Inc. v. Mills*, 435 F. Supp. 228, 233 (D. Me. 2019) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 180 (3d Cir. 2017)).

In any First Amendment claim based on a government restriction on speech, the first question is what level of scrutiny the government must satisfy. This ranges from strict scrutiny, which is the

most difficult to satisfy, to rational basis review, which is the most deferential. Defendants' actions constitute a content-based restriction on speech and cannot survive strict scrutiny.

### 3.2.1 Defendants' Conduct is Subject to Strict Scrutiny

A regulation is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015) (finding that regulation which specified "political signs" and "ideological signs" was content-based). In deciding whether a restriction is content-based, a court must "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id*. Some such restrictions are obvious, while "others are more subtle, defining regulated speech by its function or purpose." *Id*. Even facially content-neutral regulations will be considered content-based if they cannot be "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). To survive strict scrutiny analysis, a restriction on speech must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2817 (2011).

Mr. Berge has a First Amendment right to record public officials performing their public-facing job functions. *Martin v. Gross*, 340 F. Supp. 3d 87, 97-98 (D. Mass. 2018) (citing *Glik v. Cunniffee*, 655 F.3d 78 (1st Cir. 2011)). However, even if the act of recording his exchange with Ms. Delisi was not itself, protected (although it was), he also has a First Amendment right to publish these recordings to the general public. *Id*. Defendants threatened to retaliate against Mr. Berge for this protected activity, whether in the form of referral for criminal prosecution or bringing civil suit. (**Exhibit 1**.) These actions made specific reference to the content of Mr. Berge's protected conduct; they are not content-neutral time, place, and manner restrictions. Accordingly, Defendants' actions are subject to strict scrutiny, which they cannot satisfy.

### 3.2.2 Defendants' Conduct Cannot Survive Strict Scrutiny

To survive strict scrutiny, Defendants must show their conduct (1) furthers a compelling government interest and (2) their conduct is narrowly tailored to achieve that interest. *Bennett*, 131 S. Ct. at 2817.

There is no compelling government interest served by threatening Mr. Berge with criminal prosecution. Mr. Berge did not violate the Wiretapping Law. The law only forbids the "interception" of communications, which is defined as "to *secretly* hear [or] *secretly* record . . . the contents of any wire or oral communications . . . ." Mass. Gen. Laws ch. 272, § 99(B)(4) (emphasis added). The law thus prohibits only the surreptitious recording of conversations. There was nothing "secret" about Mr. Berge's recording; he prominently displayed his recording device and informed Ms. Delisi he was recording. Any reasonable person would know that Mr. Berge did not violate the Wiretapping Law. Any level of review of the law would inform the average person that recording a conversation with the knowledge of all participants does not violate it.

Maybe there is a governmental interest in not allowing the surreptitious recording of government officials performing their duties, but that is not what happened here. Defendants are threatening Mr. Berge with prosecution for a crime he did not commit, for the specific purpose of intimidating him into removing protected speech he made available on his publicly accessible Facebook page. This flagrantly censorious motive can only be justified by reference to the government's interest to save itself from embarrassment, which is not even a legitimate interest for government action. Defendants cannot strict scrutiny, nor can they satisfy even rational basis review for lack of a legitimate government interest.

Defendants' actions thus violated Mr. Berge's First Amendment rights, and he has established a strong likelihood of prevailing on his § 1983 claim.

### 3.3 Irreparable Harm

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 374 (1976). Because of this, if a plaintiff demonstrates a likelihood of success, they necessarily also establish irreparable harm. *Fortuño*, 699 F.3d at 15. Because there is a strong likelihood of success on the merits of Mr. Berge's claims under the First Amendment, Mr. Berge has shown a probability of irreparable harm in the absence of an injunction.

/ /

### 3.4 Balance of Hardships

When a government regulation restricts First Amendment-protected speech, the balance of hardships tends to weigh heavily in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 251 (D.P.R. 2002) (holding that "insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech").

Due to the lack of any surreptitious recording of Ms. Delisi, there are no hardships to balance. Mr. Berge is currently under threat of criminal prosecution, while Defendants are embarrassed by a video Mr. Berge published on Facebook. The hardship on Mr. Berge's First Amendment rights is by itself sufficient for this factor to weigh in favor of a temporary restraining order, but the complete lack of any conceivable harm on the part of Defendants makes this conclusion inescapable.

### 3.5 Public Interest

"The public interest is served by protecting First Amendment rights from likely unconstitutional infringement." *Mills*, 435 F. Supp. at 250. The public interest is served by issuing an injunction where "failure to issue the injunction would harm the public's interest in protecting First Amendment rights in order to allow the free flow of ideas." *Magriz v. union do Tronquistas de Puerto Rico, Local 901*, 765 F. Supp. 2d 143, 157 (D.P.R. 2011) (citing *United Food & Commer. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 363 (6th Cir. 1998)). "When a constitutional violation is likely, moreover, the public interest militates in favor of injunctive relief because 'it is always in the public interest to prevent violation of a party's constitutional rights.'" *Id*. (quoting *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010)).

There is no possibility the public interest would be harmed by issuing the requested temporary restraining order. Indeed, the public would benefit from being able to view Mr. Berge's video demonstrating the unreasonable and unprofessional conduct of public officials in the course of their official duties. This factor weighs in favor of injunctive relief.

/ /

/ /

## 4.0 CONCLUSION

For the foregoing reasons, the Court should enter a temporary restraining order against Defendants preventing them from threatening or attempting to coerce Mr. Berge into removing his First Amendment-protected speech. The Court should then convert its temporary restraining order into a preliminary injunction.

## REQUEST FOR ORAL ARGUMENT

Plaintiff believes the issues are so simple and straightforward that there is no need for oral argument, but of course the Plaintiff will not object to oral argument if the Court believes it will be helpful.

Dated: March 7, 2022    Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Attorneys for Plaintiff
Inge Berge

# EXHIBIT 1

Demand letter from Gloucester Public Schools



**The GLOUCESTER PUBLIC SCHOOLS**
*Our mission is for all students to be successful, engaged, lifelong learners.*

Roberta A. Eason
Human Resources
2 Blackburn Drive
Gloucester, MA 01930
Phone: 978-281-98014/ Fax 978-281-9899
Email: reason@gloucesterschools.com

---

March 3, 2022

Mr. Inge Berge
410 Washington Street/ #C
Gloucester, MA 01930

Dear Mr. Berge:

This letter is in response to your Facebook posting of a recording taken by you today without the consent of all parties at the Gloucester Public Schools Administration Building. Please be advised that Massachusetts recording law stipulates that it is a two-party consent state. In Massachusetts, it is a criminal offense to use any device to record and/or disseminate communications, whether the communications are by wire, oral or electronic, without the consent of all contributing parties. Mass. Ann. Laws ch. 272, § 99(C). This means that in Massachusetts you are prohibited from recording a conversation you are taking part in unless all parties are in agreement. Ms. Delisi unambiguously told you that she was not consenting to being recorded.

We demand that you immediately remove the post from your Facebook account and/or any other communications to prevent the pursuit of legal action in this matter.

Sincerely,

Roberta A. Eason
Director of Human Resources