UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| INGE BERGE, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) C.A. No. 1:22-cv-10346-AK |
| | ) |
| SCHOOL COMMITTEE OF GLOUCESTER; | ) |
| BEN LUMMIS, in his personal capacity; | ) |
| ROBERTA A. EASON, in her personal capacity; and | ) |
| STEPHANIE DELISI, in her personal capacity, | ) |
| Defendants. | ) |

_____

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)

## I. INTRODUCTION

This action arises out of plaintiff's recorded visit to the Administration Office of Gloucester Public Schools ("GPS"), 2 Blackburn Drive, Gloucester, MA, on March 3, 2022. Inge Berge, a Gloucester resident, visited the Administration Office on personal business – *i.e.,* to obtain five tickets to a sold-out performance of a school play in which his daughter was scheduled to appear. Mr. Berge recorded the visit on his cellphone against the wishes of two GPS administrators, Ben Lummis, Superintendent of Schools, and Stephanie Delisi, Executive Secretary, and subsequently uploaded the recording (together with commentary) onto Facebook.[1] (Verified First Amended Complaint (hereinafter "Am. Compl."), ¶ 15). By letter issued that same day, GPS Director of Human Resources, Roberta Eason, advised Mr. Berge that the recording was prohibited under the Massachusetts Wiretap Statute, M.G.L. c. 272, § 99, and demanded plaintiff to remove the Facebook post or face possible legal action. (Am. Compl., Ex. 1). Plaintiff, however, neither

---

[1] Plaintiff cites and provides a link to the recording in his Verified First Amended Complaint. (Am. Compl., ¶ 15, n. 1). For convenience, defendants will refer to this video as the "Recording."

removed the post nor faced legal action. Instead, he commenced this action. On March 11, 2022, district counsel for GPS advised plaintiff's counsel that the March 3, 2022 letter was withdrawn, a measure confirmed in writing on March 22, 2022.[2]

Plaintiff brings this action against four defendants, the Gloucester School Committee, Superintendent Lummis, Ms. Delisi and Ms. Eason, under 42 U.S.C. § 1983 for the alleged violation of his rights to free speech as protected under the First Amendment. The school officials are sued in their individual capacities only. In his Verified First Amended Complaint, plaintiff claims he engaged in protected activity both when he recorded his interactions with school officials in the Administration Office on March 3, 2022 and when he subsequently posted the recording on Facebook. (Am. Compl., Counts I & IV). The letter to Mr. Berge from the HR Director (so plaintiff alleges) was sent in retaliation for such activity. (Am. Compl., ¶ 26). In addition to damages under Section 1983, plaintiff seeks declaratory relief under the Massachusetts Wiretap Statute and the Family Educational Rights and Privacy Act of 1974 ("FERPA"). (Am. Compl., Counts II & III).

Plaintiff's Verified First Amended Complaint fails to state claims against defendants upon which relief can be granted and, therefore, must be dismissed. Fed. R. Civ. P. 12(b)(6). Defendants' Motion to Dismiss is based on the following alternative grounds. First, plaintiff's recording of school officials in the GPS Administration Office regarding a personal matter was not protected

---

[2] A true and accurate copy of this March 22, 2022 writing is attached to defendants' Motion to Dismiss as Exhibit "A." In ruling on a motion to dismiss, a court may take into consideration certain documents without converting the motion into one for summary judgment, including "documents the authenticity of which are not disputed by the parties; … documents central to plaintiffs' claim; or … documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "When … a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (internal citation omitted).

under the First Amendment. Second, because the recording did not involve a "matter of public concern," plaintiff's posting on Facebook was likewise unprotected. Third, defendants did not retaliate against plaintiff for engaging in protected activity. Fourth, the individual defendants are entitled to qualified immunity. Fifth, plaintiff fails to state a claim of municipal liability against the Gloucester School Committee. Sixth, because plaintiff fails to state claims under Section 1983, his demands for declaratory relief under the Massachusetts Wiretap Statute and FERPA are moot. Defendants submit this Memorandum of Law in support of their Motion to Dismiss.

## II.  FACTS[3]

On March 3, 2022, plaintiff entered the GPS Administration Office at 2 Blackburn Drive[4] for the purpose of obtaining five tickets to the opening night performance of "The Little Mermaid, Jr.," a student production to be held at the O'Maley Innovation Middle School.[5] Plaintiff's daughter was playing a lead in the production and Mr. Berge (quite understandably) wished to attend.[6] Mr. Berge, however, had "totally messed up."[7] He was supposed to buy five tickets for opening night, but somehow neglected to do so.[8] Now, on March 3, 2022, all tickets were sold out.[9] As Mr. Berge put it: "I'm so in the dog house with everyone because I didn't get these tickets for opening night."[10] Although Mr. Berge questioned O'Maley's restriction on the number of available seats, he nonetheless admitted his issue was not one of great public importance. "[It's] a

---

[3] The facts below are taken from the allegations of plaintiff's Verified First Amended Complaint and the Recording cited therein. (Am. Compl., ¶ 15, n. 1). Defendants do not admit to plaintiff's facts, but accept them as true (as they must) for the purposes of defendants' Motion to Dismiss.
[4] Two Blackburn Drive is also the location of the GPS Pre-School Program. Recording, at 00:57.
[5] Id., at 00:15, 05:03.
[6] Id., at 03:40, 06:48.
[7] Id., at 05:40.
[8] Id., at 03:40, 06:48.
[9] Id., at 00:22, 04:32.
[10] Id., at 05:48.

very small situation that should have been solved very quickly and easily ….”[11] Indeed, “it’s the smallest thing in the world.”[12]

The public entrance door to the Administration Office is kept locked;[13] upon arrival, Mr. Berge pressed the intercom and was buzzed in.[14] Plaintiff began recording his visit even before entry. (Am. Compl., ¶ 11). After first speaking with the receptionist at the front desk, he was approached by defendant, Stephanie Delisi, in an adjoining office. Ms. Delisi inquired: “What can I help you with?”[15] Mr. Berge informed her: “I’m filming this. I’m doing a story on it. If that’s OK with you.” (Am. Compl., ¶12). He then asked: “Is that alright?”[16] Ms. Delisi replied: “No, no I don’t want to be filmed.”[17] (Am. Compl., ¶ 13). Mr. Berge kept recording anyway. Ms. Delisi went into Superintendent Lummis’s adjacent office. The Superintendent came to his door and spoke to plaintiff. He asked Mr. Berge to shut off the recording: “You do not have permission to film in this area.”[18] Mr. Berge kept recording. The Superintendent continued: “I’m happy to speak with you about O’Maley if you turn that off. You do not have my permission to film here right now.”[19] Mr. Berge kept recording. The Superintendent returned to his office and shut the door.

Assistant Superintendent Gregory Bach then met with Mr. Berge and took down the information regarding plaintiff’s so-called “unpleasant situation.”[20] (Am. Compl., ¶ 14). Unlike

---

[11] Id., at 03:40.

[12] Id., at 05:30.

[13] Massachusetts law requires school districts to adopt “standards and procedures to assure school building security and safety of students and school personnel.” M.G.L. c. 71, § 37H.

[14] Id., at 00:58.

[15] Id., at 01:49.

[16] Presumably plaintiff understood he needed Ms. Delisi’s permission to record.

[17] Id., at 01:50 – 01:57.

[18] Id., at 02:24.

[19] Id., at 02:33 – 02:42. Despite the video evidence, plaintiff alleges, in his Verified First Amended Complaint, that “[a]t no point did anyone inform Mr. Berge that filming was not permitted.” (Am. Compl., ¶ 13).

[20] Recording, at 03:40.

Ms. Delisi, Mr. Berge did not ask for Mr. Bach's permission to record their meeting, and Mr. Bach raised no objection to the recording. (Am. Compl., ¶ 14). Following their meeting, Mr. Berge commented: "Well that seemed to go pretty well. Ah, Mr. Bach there. We shall see."[21]

That afternoon, plaintiff uploaded the recording made in the GPS Administration Office to his Facebook page, together with commentary. (Am. Compl., ¶ 15, n. 1). On the same day, HR Director Eason advised Mr. Berge by letter that the recording and/or dissemination of communications without the consent of all contributing parties was prohibited under the Massachusetts Wiretap Statute. (Am. Compl., ¶ 16 & Ex. 1). In her letter, Ms. Eason demanded plaintiff "immediately remove the post from your Facebook account and/or any other communications to prevent the pursuit of legal action in this matter." (Am. Compl., Ex. 1). Plaintiff, however, did not comply with Ms. Eason's demand or remove the recording from his Facebook account. Indeed, the letter had no chilling effect on plaintiff whatsoever. As plaintiff explains, "[a]ny reasonable person would know" that he (Mr. Berge) did not violate the Wiretap Statute, and "[a]ny level of review of the law would inform the average person that recording a conversation with the knowledge of all participants does not violate [the Wiretap Statute]." (Am. Compl., ¶ 20). On March 11, 2022, district counsel for GPS withdraw the March 3, 2022 letter, a measure confirmed in writing shortly thereafter. (Ex. A).

Plaintiff filed this suit on March 7, 2022, four days after making and posting his recording.

## III.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a pleading. To survive a Rule 12(b)(6) motion, a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the

---

[21] Id., at 08:04. Mr. Berge did not receive the requested tickets. Id., at 08:12.

elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (court should ignore statements "that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). In other words, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Alston v. Spiegel, 988 F.3d 564, 571 (1st Cir. 2021) (quoting Twombly, 550 U.S. at 555). A mere "possibility of misconduct" is not enough. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Hamann v. Carpenter, 937 F.3d 86, 90 (1st Cir. 2019) (conclusory allegations of ill will and spite held insufficient to cross plausibility threshold).

In 2007, the Supreme Court restated the well-known standard that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Two years later, the Supreme Court clarified Twombly by stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will ... be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id., 556 U.S. at 679.

## IV.  ARGUMENT

### A.    PLAINTIFF'S RECORDING WAS NOT PROTECTED ACTIVITY UNDER THE FIRST AMENDMENT.

In Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011), the First Circuit Court of Appeals held that the First Amendment protects the right of the public to record "government officials, including law enforcement officers, in the discharge of their duties in a public space ...." Id., at 85. The case involved a pedestrian charged under the Massachusetts Wiretap Statute for using his cellphone to

record several police officers arresting a young man on Boston Common. The right to record, cautioned the Court, may nonetheless "be subject to reasonable time, place and manner restrictions." Id., at 84. Yet, given the location of the recording at issue – "the oldest city park in the United States and the apotheosis of a public forum" – the Glik Court concluded it had "no occasion to explore those limitations here." Id., at 84. Three years later, the First Circuit extended First Amendment protection to a plaintiff arrested for attempting to record a late night traffic stop on a public way. Gericke v. Begin, 753 F.3d 1, 9 (1st Cir. 2014). Again, recognizing that "[r]easonable restrictions on the exercise of the right to film may be imposed when the circumstances justify them," the Court reaffirmed that "an individual's exercise of her First Amendment right to film police activity carried out in public, including a traffic stop, necessarily remains unfettered unless and until a reasonable restriction is imposed or in place." Id., at 7-8. Notably, in Gericke, the officer in question issued no order to the plaintiff "to stop filming or leave the area …." Id., at 3 & 10 (characterizing such omission as "significant").

The Administration Office is neither a public park nor public way. It is an office where school officials conduct the administrative business of Gloucester Public Schools. Further, the purpose of plaintiff's visit to the Administration Office was (in his own words) to "score five tickets" for his daughter's Middle School play,[22] not to monitor law enforcement officers performing their official duties in a public space. Thus, plaintiff's business was entirely personal. Finally, unlike the plaintiff in Gericke, Mr. Berge *was* asked to stop recording, but he refused.[23] Because GPS school administrators may impose reasonable time, place and manner restrictions on

---

[22] Recording, at 06:48.

[23] Id., at 02:33 – 02:42.

the recording of school business conducted within the Administration Office, Mr. Berge's recording was not protected activity under the First Amendment.

In late 2020, the First Circuit held that the Massachusetts Wiretap Statute's prohibition against secret, nonconsensual recordings of police officers discharging their official duties in public places was overbroad as applied and in violation of the First Amendment. Project Veritas Action Fund v. Rollins, 982 F.3d 813, 836-37 (1st Cir. 2020). In short, the Court extended Glik to secret recordings. In so doing, the First Circuit analyzed the Wiretap Statute under an intermediate level of scrutiny, which provides that a content-neutral restriction shall be upheld if it is "narrowly tailored to serve a significant government interest" and leaves open "ample alternative channels for communication." Id., at 834-35 ("application of intermediate scrutiny … accords with the approach that we took in Glik and Gericke ….") (quotations and citations omitted). After confirming the District Court's conclusion that M.G.L. c. 272, § 99 is a "content-neutral law of general applicability," id., at 834, the First Circuit acknowledged that the interests at stake – i.e., preventing interference with police activities and protecting individual privacy – are legitimate and important governmental interests. Id., at 836-37. Yet, an "outright ban" on the secret recording of police activities conducted in public, concluded the Court, was not narrowly tailored to further such interests and, therefore, unconstitutionally overbroad. Id., at 837.

Barring the recording of school business activities conducted in the Administration Office (whether open or secret) is a content-neutral restriction of general applicability. Further, such restriction serves significant governmental interests. The Superintendent and other administrators share numerous duties and responsibilities, including the day-to-day operation and oversight of

eight public schools with an enrollment of over 2,800 students in grades Pre-K through 12.[24] The efficient performance of such duties and responsibilities should not be disrupted by the recording of school administrators as they go about their daily business, much of which concerns confidential information regarding minor students and their families.[25] See Glik, 655 F.3d at 84 (upholding peaceful recording of arrest in public "that [did] not interfere with the police officers' performance of their duties"). If plaintiff's interpretation of the First Amendment is correct, anyone with a camera can enter 2 Blackburn Drive – which houses not only the Administration Office but also the GPS Pre-School Program – at any time and record whomever they wish simply by reciting the magic phrase: "I am doing a story." This cannot be the law.

Further, school officials do not lose all privacy interest by virtue of their status as public employees. Project Veritas, 982 F.3d at 838 (under certain circumstances, recording of police officers working in public could threaten officers' privacy interests). See M. Kaminski, "Privacy and the Right to Record," 97 B.U. L. Rev. 167, 203 (Jan. 2017) ("Privacy in the context of recording is the ability of an individual to dynamically manage her social accessibility at a particular moment, given features of the physical environment.") Such privacy interests may be jeopardized without reasonable time, place and manner restrictions on recordings.

While the Project Veritas Court did not conduct a forum analysis, it nonetheless recognized that a governmental interest (such as the interest in privacy) may be more significant in different

---

[24] See Department of Education School District Profiles:
https://profiles.doe.mass.edu/general/general.aspx?topNavID=1&leftNavId=100&orgcode=01070000&orgtypecode=5
[25] The First Amendment should not allow speech to interfere with a government employee's ability to perform her job. "[T]he question is not whether the audience can avoid the message by leaving a particular location ... but whether they should have to." C. M. Corbin, "The First Amendment Right Against Compelled Listening," 89 B.U. L. Rev. 939, 946 (June 2009).

spaces.[26] <u>Project Veritas</u>, 982 F.3d at 838. Superintendent Lummis, for example, should have a greater expectation of privacy in his own office than while attending a School Committee meeting. Also, the right to record affords protection for recordings on matters of public interest, not purely personal matters. See <u>Smith v. City of Cumming</u>, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); <u>Demarest v. Athol/Orange Cmty. Television, Inc.</u>, 188 F. Supp. 2d 82, 95 (D. Mass. 2002) ("plaintiffs had a constitutionally protected right to record matters of public interest.") Plaintiff's visit to "score five tickets" to his daughter's play was not a matter of public interest. Finally, a restriction on the recording of school business activities in the Administration Office leaves ample alternative channels for communication, including face-to-face meetings, telephone conversations, email communications, School Committee meetings, and other public fora. Plaintiff's recording was not protected under the First Amendment and, therefore, could be reasonably restricted.

**B.    <u>PLAINTIFF'S POSTING ON FACEBOOK WAS NOT PROTECTED ACTIVITY UNDER THE FIRST AMENDMENT.</u>**

---

[26] First Amendment law typically recognizes three types of fora: the traditional public forum; the designated public forum; and the limited or non-public forum. <u>Ridley v. MBTA</u>, 390 F.3d 65, 76 (1st Cir. 2004). The traditional public forum consists of "places which by long tradition or by government fiat have been devoted to assembly and debate …," such as streets, parks and public sidewalks. <u>Perry Educ. Ass'n v. Perry Local Educators' Ass'n</u>, 460 U.S. 37, 45 (1983). A designated public forum consists of public property that government has, by both expressed intention and actual practice, opened up as a place for expressive activity. <u>Pleasant Grove City, Utah v. Summum</u>, 555 U.S. 460, 469 (2009). A limited or non-public forum is created "when the government opens its property only to use by certain groups or for the discussion of certain subjects." <u>Lu v. Hulme</u>, 133 F. Supp. 3d 312, 324-25 (D. Mass. 2015) (citing <u>Christian Legal Soc. Chap. of Univ. of Cal., Hastings Coll. of Law v. Martinez</u>, 561 U.S. 661, 679 n. 11 (2010)). In traditional and designated public fora, restrictions on speech are subject to strict scrutiny. In limited or non-public fora, restrictions based on subject matter and speaker identity are permitted "so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint-neutral." <u>Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.</u>, 473 U.S. 788, 806 (1985). The GPS Administration Office is a limited or non-public forum where reasonable, viewpoint-neutral restrictions are permitted.

In <u>Bartnicki v. Vopper</u>, 532 U.S. 514 (2001), the United States Supreme Court extended constitutional protection to journalists and other publishers for the dissemination of information obtained by illegal means. There, the Court upheld the right of a radio host to broadcast an illegally intercepted and recorded phone conversation between two people involved in a labor dispute between a public school district and a teachers' union. <u>Id.</u>, at 525. The First Amendment, ruled the Court, protects such publication provided (1) the publisher played no part in the illegal interception; (2) the publisher lawfully acquired the information; and (3) the information is on "a matter of public concern." <u>Id.</u>, at 534. See <u>Jean v. Massachusetts State Police</u>, 492 F.3d 24, 33 (1st Cir. 2007) (upholding right to post audio/video recording of arrest and warrantless search on website that plaintiff "had reason to know" had been illegally recorded by third person).

Here, defendants do not condone plaintiff's publication of a recording taken in a location where such recordings are not permitted.[27] Superintendent Lummis politely asked Mr. Berge to turn off his camera; plaintiff flatly refused.[28] Nor was Mr. Berge wholly innocent in intercepting the information – on the contrary, he was the producer, director, cameraman and lead of the posted recording. But, as set forth above, the story of plaintiff's quest for five Middle School theater tickets is not information on a matter of "public concern." Thus, plaintiff's publication of the recording enjoys no First Amendment protection.

Matters of public concern are "matter[s] of political, social, or other concern to the community." <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983). Whether speech is protected raises a question of law to be determined by the "content, form, and context of a given statement, as

---

[27] Courts have not yet clearly defined the scope of what constitutes an "illegal" interception of information. Here, plaintiff requested and was denied permission to record his visit.

[28] Recording, at 02:33 – 02:42.

revealed by the whole record." <u>Id.</u>, at 147-148 & n. 7 (questionnaire circulated to coworkers soliciting views on office transfer policy, office morale and confidence in supervisors held not speech on matters of public concern). See <u>Lane v. Franks</u>, 573 U.S. 228, 241 (2014) (speech involves matters of public concern when "it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.") (quoting <u>Snyder v. Phelps</u>, 562 U.S. 443, 453 (2011)).

Speech regarding personal issues and concerns is not so protected. See <u>Rosado-Quinones v. Toledo</u>, 528 F.3d 1, 5 (1st Cir. 2008) (police officer's complaint alleging harassment by fellow employees and delay in rearmament held not on matters of public concern); <u>Meaney v. Dever</u>, 326 F.3d 283, 289 (1st Cir. 2003) (personal protest in blowing horn to irritate mayor after union picketing event held not a matter of public concern); <u>Allinova v. Worcester Sch. Comm.</u>, 994 F.2d 905, 914 (1st Cir. 1993) (posting letters of reprimand concerned "purely personal issue" and not matter of public concern). Here, plaintiff described his issue as a "ticket snafu,"[29] "kind of an unpleasant situation" and "a very small situation."[30] Specifically: "I'm so in the dog house with everyone because I didn't get these tickets for opening night."[31] This is not the stuff of political, social or other concerns to the community. As revealed by the "whole record," plaintiff's Facebook posting regarding his effort to score tickets to his daughter's play was not protected under the First Amendment.

## C.     DEFENDANTS DID NOT RETALIATE AGAINST PLAINTIFF FOR ENGAGING IN PROTECTED ACTIVITY.

---

[29] <u>Id.</u>, at 00:13.
[30] <u>Id.</u>, at 03:42 – 03:36.
[31] <u>Id.</u>, at 05:48.

To recover for First Amendment retaliation under 42 U.S.C. § 1983, plaintiff must show that (1) he engaged in constitutionally protected activity; (2) he was subjected to an adverse action by defendants; and (3) the protected activity was a substantial or motivating factor in defendants' adverse action. D.B., *ex rel.* Elizabeth B. v. Esposito, 675 F.3d 26, 42 (1st Cir. 2012); Gorelik v. Costin, 605 F.3d 118, 123 (1st Cir. 2020). If plaintiff makes such a showing, defendants may still avoid liability by showing they would have taken the same action even in the absence of plaintiff's protected activity. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

To be adverse, defendants' action must be more than *de minimis*. See Camona-Rivera v. Puerto Rico, 464 F.3d 14, 20 (1st Cir. 2006) (delay in providing accommodations to disabled person which results in mere inconvenience rather than significant injury or harm does not amount to adverse action); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (plaintiff must show that "defendant's conduct resulted in something more than a '*de minimis* inconvenience' to her exercise of First Amendment rights"). Instead, it must be "of a kind that would deter persons of 'ordinary firmness' from exercising their constitutional rights in the future." Starr v. Dube, 334 Fed. Appx. 341, 342 (1st Cir. 2009); Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001). While the standard is objective, plaintiff's actual response to defendant's conduct is relevant to the determination of whether a person of "ordinary firmness" would be deterred in exercising his First Amendment rights. Constantine, 411 F.3d at 500; Starr v. Moore, 849 F. Supp. 2d 205, 209 (D. N.H. 2012). See Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir. 2003) ("how plaintiff acted might be evidence of what a reasonable person would have done.")

As set forth above, plaintiff failed to allege sufficient facts to show that he engaged in constitutionally protected activity, either by recording his interactions with school administrators

on March 3, 2022, or by subsequently posting his private recording on Facebook. Therefore, plaintiff cannot satisfy the first element of a retaliation claim.

Nor can plaintiff show that he was subjected to an adverse action. The letter sent to Mr. Berge (and only Mr. Berge) on Friday, March 3, 2022, advised plaintiff that it was a criminal offense to record conversations without the other participant's agreement, and "Ms. Delisi unambiguously told you that she was not consenting to being recorded." (Am. Compl., Ex. 1).[32] Ms. Eason accordingly demanded that plaintiff "immediately remove the post from your Facebook account and/or any other communications to prevent the pursuit of legal action in this matter." Plaintiff did not comply with Ms. Eason's demand. Nor did defendants "pursue" legal action. Quite the opposite, plaintiff filed this action four days later on Monday, March 7, 2022. On March 11, 2022, district counsel for GPS withdrew the letter and, shortly thereafter, confirmed such withdrawal in writing. (Ex. "A"). In the letter of withdrawal, district counsel confirmed that GPS would not be taking legal action against Mr. Berge pursuant to the Massachusetts Wiretap Statute.

The letter of March 3, 2022 was no more than a *de minimis* inconvenience to plaintiff's exercise of his First Amendment "rights." It was not an adverse action that would deter a person of "ordinary firmness" from exercising his constitutional rights in the future, especially in light of its prompt withdrawal. Indeed, plaintiff (it appears) did not even take the letter seriously. He was not chilled. He declined to remove the post and promptly doubled down by filing this action the following Monday. In his Verified First Amended Complaint, plaintiff explains, "[a]ny reasonable person would know" that he (Mr. Berge) did not violate the Wiretap Statute, and "[a]ny level of review of the law would inform the average person that recording a conversation with the

---

[32] Plaintiff expressly requested such consent, but did not receive it. Recording, at 01:50 – 01:57. Plaintiff's continued recording begs the question of why he asked for permission in the first place.

knowledge of all participants does not violate [the Wiretap Statute]." (Am. Compl., ¶ 20). Plaintiff's own reaction demonstrates that the March 3, 2022 letter would not deter a person of "ordinary firmness" from exercising his constitutional rights. Plaintiff's First Amendment retaliation claim must, therefore, be dismissed.

## D.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

To determine whether a government official enjoys qualified immunity, a court must decide "whether a reasonable official [in the defendant's position] could have believed his actions were lawful in light of clearly established law." Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994). The doctrine of qualified immunity "requires a constitutional right to be clearly established so that public officials are on notice that this conduct is in violation of that right." Frazier v. Bailey, 957 F.2d 920, 930 (1st. Cir. 1992). The focus is not on the merits of the underlying claim but, instead, on the objective legal reasonableness of the official's conduct as measured by reference to clearly established law and the information the official possessed at the time of the allegedly unlawful conduct. Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995); Febus-Rodriguez, 14 F.3d at 91. The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Lowinger, 50 F.3d at 65; Hunter v. Bryant, 502 U.S. 224, 229 (1991). See Savard v. Rhode Island, 338 F.3d 23, 28 (1st Cir. 2003) ("The bottom line is that the qualified immunity defense prevails unless the unlawfulness of the challenged conduct is 'apparent.'") The framework for analyzing qualified immunity consists of a two-part inquiry: (1) whether plaintiff's allegations, if true, establish a constitutional violation; and (2) whether the constitutional right at issue was so clearly established at the time of the alleged violation that a reasonable official in defendant's position

"should have known how they applied to the situation at hand." Belsito Communications, Inc. v. Decker, 845 F.3d 13, 23 (1st Cir. 2016).

"A legal principle can be 'clearly established' without factually identical precedent, although the existing case law must have placed the specific constitutional … question 'beyond debate.'" Pagan-Gonzalez v. Moreno, 919 F.3d 582, 598 (1st Cir. 2019) (quoting Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)). A right is "clearly established" if "the state of the law at the time of the alleged violation gave the defendant fair warning that his *particular* conduct was unconstitutional." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citation omitted) (emphasis added). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix, 136 S.Ct. at 308 (internal citations and quotations omitted).

As set forth above, plaintiff's allegations, even if true, do not establish viable retaliation claims under the First Amendment. But even if they do, the scope of plaintiff's rights (if any) to record the business of activities of school officials in the GPS Administration Office on the subject of opening night tickets to his daughter's school play and to later post such recording on Facebook was not clearly established at the time of defendants' conduct. By asking plaintiff to "turn off" the recording and later instructing plaintiff to remove the posted recording from Facebook, no reasonable official in the position of a GPS administrator would have understood that he or she was violating plaintiff's constitutional rights. Glik, Gericke and Project Veritas all define the right to record in the context of videos (open and secret) taken of police officers performing law enforcement duties in public fora. The First Circuit has not expressly stated, however, whether the right to record extends to non-law enforcement personnel (such as school administrators) performing official duties in a limited or non-public forum where reasonable, viewpoint-neutral

restrictions on speech are permitted. Nor has the First Circuit explained the constitutional significance of a government request (such as the one made here) to turn off the recording, or the level of protection afforded to a recording made for personal, non-public purposes.

Where defendants raise the defense of qualified immunity, plaintiff bears the burden of showing the defense does not apply. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). This burden requires plaintiff to spotlight "controlling authority" or "a robust consensus of cases of persuasive authority" (if there is one) that forbade defendants from acting as they did. Belsito, 845 F.3d at 23. Plaintiff can make no such showing here. Plaintiff's Verified First Amended Complaint should be dismissed as against the individual defendants.[33]

**E.     PLAINTIFF FAILS TO STATE A CLAIM OF MUNICIPAL LIABILITY AGAINST THE GLOUCESTER SCHOOL COMMITTEE.[34]**

Municipal entities, such as the City of Gloucester, cannot be held liable under Section 1983 on a theory of *respondeat superior*. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 665 (1978). In order to prevail on a Section 1983 claim against a municipality, plaintiff must demonstrate that his harm was caused by a constitutional violation and that the municipality was responsible for such violation. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992). Furthermore, if no municipal actor violated any protected rights of the plaintiff, he cannot prevail on a Section 1983 claim against the municipality. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); Pittsley v. Warish, 927 F.2d 3, 9 n.4 (1st Cir. 1991).

---

[33] The individual defendants reserve the right to raise reliance on the advice of counsel in support of their qualified immunity defense, but decline to do so at the Motion to Dismiss stage.

[34] The Gloucester School Committee is not a separate legal entity subject to suit. Rather, it is an administrative arm of the municipality, City of Gloucester. Mullen v. Tiverton Sch. Dist., 504 F. Supp. 3d 21, 34 (D. R.I. 2020).

A municipality may, nevertheless, be held liable under Section 1983 if it deprives a person of a constitutional right through "a policy statement, ordinance, regulation, or decision officially adopted or promulgated." Smith v. City of Boston, 413 Mass. 607, 610 (1992) (citing Monell, 436 U.S. at 690). However, out of concern that municipal liability based on fault might collapse into de facto *respondeat superior* liability, the Supreme Court "set a very high bar for assessing municipal liability under Monell." Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005). Thus, in the absence of a formal government policy, liability may only be imposed if the plaintiff's rights were violated by the existence of a widespread practice that, although not authorized by law or express government policy, was "so permanent and well settled as to constitute a 'custom or usage' with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)). Moreover, a plaintiff must show "a direct link between the municipality's policy and the constitutional violation." Bowen v. City of Manchester, 966 F.2d 13, 18 (1st Cir. 1992).

Here, plaintiff can make no showing that the individual defendants committed an underlying constitutional violation. For that reason alone, plaintiff's claim against the City should be dismissed. However, plaintiff also alleges no unconstitutional custom, policy or practice on the part of the City, nor does he allege sufficient facts to show that he was harmed by the City's enforcement of or adherence to an unconstitutional custom, policy or practice. Absent such allegations, the City is entitled to the dismissal of plaintiff's Section 1983 claim.

## F.    PLAINTIFF'S DEMANDS FOR DECLARATORY RELIEF ARE MOOT.

"The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" ACLU of Mass. v. United States Conf. of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (quoting Mangual v. Rotger-

Sabat, 317 F.3d 45, 60 (1st Cir. 2003)). "If events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case." Mangual, 317 F.3d at 60. For declaratory relief to withstand a mootness challenge, the facts alleged must show "a substantial controversy … of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Preiser v. Newkirk, 422 U.S. 395, 402 (1975). Here, where defendants withdrew the demand that plaintiff remove his recording from Facebook (Ex. "A"), plaintiff's "need" for declaratory relief is neither immediate nor real. Stated another way, declaratory relief in the form of an order that defendants' past conduct was somehow improper under the Massachusetts Wiretap Statute or FERPA would be merely advisory.

Plaintiff may argue that this case falls into the "voluntary cessation" exception to the mootness doctrine articulated in Boston Bit Labs, Inc. v. Baker, 11 F.4th 3, 9-10 (1st Cir. 2021). Under this doctrine, a case is not necessarily moot "when a defendant voluntar[ily] ceases the challenged practice in order to moot the plaintiff's case and there exists a reasonable expectation that the challenged conduct will be repeated" after the suit's dismissal. Town of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 59 (1st Cir. 2016). The doctrine exists "to stop a scheming defendant from trying to immunize itself from suit indefinitely …." Boston Bit Labs, 11 F.4th at 10 (quotation and citation omitted). See In re Financial Oversight & Mgmt. Bd., 16 F.4th 954, 962 (1st Cir. 2021) (concerns regarding manipulation to evade judicial review underlie voluntary cessation doctrine).

Withdrawal of defendants' demand that plaintiff remove the posted recording from his Facebook account is not the stuff of judicial avoidance. As set forth above, plaintiff's recording and posting were not protected activities under the First Amendment. Further, even they were constitutionally protected, the individual defendants are entitled to qualified immunity from any claim under 42 U.S.C. § 1983 and plaintiff fails to adequately plead a claim of municipal liability

19

against the City. Absent viable civil rights claims, plaintiff's requests for a judicial declaration that his past conduct was permissible under the Massachusetts Wiretap Statute and/or FERPA seek no more advisory relief. Such relief should be denied.

## V.  CONCLUSION

For the reasons set forth above, the defendants, the Gloucester School Committee, Superintendent Ben Lummis, Stephanie Delisi and Roberta Eason, hereby request that this Honorable Court allow their Motion to Dismiss plaintiff's Verified First Amended Complaint and thereafter order said Complaint dismissed under Rule 12(b)(6) for failure to state claims upon which relief can be granted.

Respectfully submitted,

The Defendants,
SCHOOL COMMITTEE OF GLOUCESTER;
BEN LUMMIS, in his personal capacity;
ROBERTA A. EASON, in her personal capacity; and
STEPHANIE DELISI, in her personal capacity;
By their Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

*/s/ John J. Davis*
_____
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on April 27, 2022.


*/s/ John J. Davis*

_____
John J. Davis, Esq.