UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INGE BERGE,<br>    Plaintiff,<br><br>vs.<br><br>SCHOOL COMMITTEE OF GLOUCESTER;<br>BEN LUMMIS, in his personal capacity;<br>ROBERTA A. EASON, in her personal capacity; and<br>STEPHANIE DELISI, in her personal capacity,<br>    Defendants. | C.A. No. 1:22-cv-10346-AK |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

Defendants, Gloucester School Committee, Superintendent Ben Lummis, Roberta Eason and Stephanie Delisi, did not previously oppose plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction because it is clearly moot. On March 7, 2022, plaintiff filed a Motion for a TRO and PI asking this Court to enter an Order against defendants "preventing them from threatening or attempting to coerce Mr. Berge into removing his First Amendment protected speech." (ECF No. 2, at 7). Attached as "Exhibit 1" to plaintiff's Motion was a copy of a letter sent to plaintiff by Gloucester Public Schools ("GPS") on March 3, 2022. In that letter, the Director of Human Resources, Roberta Eason, demanded plaintiff immediately remove a video recording of his interactions that day with GPS personnel inside the Administration Office from his Facebook account or face potential legal action. (Id., at 9). One week later, on March 11, 2022, district counsel for GPS advised plaintiff's counsel that the March 3, 2022 was *withdrawn* and that GPS *"would not be taking any legal action against Mr. Berge …."* District counsel memorialized this communication by letter to plaintiff's counsel dated March 22, 2022. (ECF, Doc. No. 15-1).

Because the relief sought in plaintiff's Motion for TRO and PI is moot (and has been moot since March 11, 2022), the Motion should be denied.

## II. BACKGROUND

This action arises out of plaintiff's unscheduled visit to the GPS Administration Office at 2 Blackburn Drive, Gloucester, MA, to "score five tickets" to the sold-out opening night performance of "The Little Mermaid, Jr.," a student production to be held at the O'Maley Innovation Middle School.[1] Over the objections of two GPS Administrators, plaintiff recorded the visit on his cell phone. Later that day, plaintiff posted the video recording (with commentary) on his Facebook account. As set forth above, GPS originally demanded plaintiff remove the post, but subsequently withdraw that demand, both orally and in writing. Plaintiff filed this suit on March 7, 2022, four days after making and posting his video recording. In his Verified First Amended Complaint, plaintiff demands compensatory damages, injunctive relief, costs and attorneys' fees for defendants' alleged violation of his First Amendment rights (Counts I & IV), as well as declaratory relief under the Massachusetts Wiretap Statute and the Family Educational Rights and Privacy Act of 1974 ("FERPA"). (Counts II & III) (ECF Doc. No. 11).

On April 27, 2022, defendants filed a Motion to Dismiss all Counts of plaintiffs' Verified First Amended Complaint under Rule 12(b)(6) for failure to state claims upon which relief can be granted, together with a Memorandum of Law in support. (ECF Doc. Nos. 15 & 16). As grounds for dismissal, defendants argued (among other things) that plaintiff's video recording and subsequent posting of the recording on social media were not protected under the First Amendment. (Id., at 6 – 12). Additionally (and alternatively), the individual defendants argued

---

[1] Plaintiff's daughter was playing a lead in the production and Mr. Berge (quite understandably) wished to attend.

they were protected from suit and liability under the doctrine of qualified immunity because it was not clearly established (in March 2022) that plaintiff had a constitutional right to record non-law enforcement personnel in a secure setting on a subject of personal interest to the plaintiff, then post such recording on Facebook. (Id., at 15 – 17). Finally, defendants argued that plaintiff's requests for declaratory relief were moot because the HR Director's letter of March 3, 2022 had been withdrawn and plaintiff's purported "need" for such relief was neither immediate nor real. (Id., at 18 – 20). On May 11, 2022, plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss. (ECF Doc. No. 18).

Despite the above, plaintiff, on August 24, 2022 (knowing full-well defendants' position), filed a "Notice of Non-Opposition to Motion for Temporary Restraining Order and for a Preliminary Injunction." (ECF Doc. No. 22). In his Notice, plaintiff requests that this Court grant him a temporary restraining order and preliminary injunction on the grounds such relief is "unopposed" by defendants. Setting aside, for a moment, that there is simply no injunctive relief left to grant, this Court should deny plaintiff's Motion for a TRO and PI.

### III.  ARGUMENT

**A.    PRELIMINARY INJUNCTION STANDARD.**

To obtain a preliminary injunction, plaintiff bears the burden of demonstrating "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020). See Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013); Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). Plaintiff bears the burden of demonstrating that each of the four factors weighs in his favor. Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir.

2006). However, "the four factors are not entitled to equal weight in the decisional calculus; rather, '[l]ikelihood of success is the main bearing wall of the four-factor framework.'" Corp. Techs., Inc., 731 F.3d at 9-10 (quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)). See CVS Pharmacy, Inc. v. Lavin, 951 F.3d 50, 55 (1st Cir. 2020) (substantial likelihood of success "weighs most heavily in the preliminary injunction analysis.")

Further, a preliminary injunction is an "extraordinary and drastic remedy." Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). Such an extraordinary remedy "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).

**B.      PLAINTIFF'S DEMAND FOR INJUNCTIVE RELIEF IS MOOT.**

Plaintiff attaches "Exhibit 1" – the March 3, 2022 letter in which the Director of Human Services demands immediate removal of the video recording of GPS personnel from plaintiff's Facebook account – in support of his Motion for TRO and PI. In the body of his Motion, plaintiff describes the recording as protected speech and asks this Court to enter an Order "preventing [defendants] from threatening or attempting to coerce Mr. Berge into removing his First Amendment protected speech." However, because GPS later withdrew the letter, expressly advising plaintiff that it "would not be taking any legal action against [him] …," there is no longer any conduct on the part of defendants for this Court to enjoin.

In Harris v. University of Mass. Lowell, __ F.4th __, 2022 WL 3095254 (1st Cir. Aug. 4, 2022), the First Circuit recently upheld the denial of an injunction to two students who challenged mandatory vaccination policies at their respective colleges. Because one student had since transferred and the other had graduated, the First Circuit held their requests for injunctive relief

4

were "inescapably moot." Id., 2022 WL 3095254, at *3. "Where, as here, 'challenged measures [no longer] adversely affect[] any plaintiff's primary conduct,' injunctive relief is unavailable and the attendant claims become moot." Id. (citing Arizonians for Official English v. Arizona, 520 U.S. 43, 67 (1997)).

> Normally, courts may not enjoin conduct if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the allege violation."

Metro-Goldwyn Mayer, Inc. v. 007 Safety Prods., Inc., 183 F.3d 10, 15 (1st Cir. 1999) (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (internal quotation and citations omitted)). See Goodwin v. C.N.J., Inc., 436 F.3d 44, 49 (1st Cir. 2006) ("[A] federal court may not grant injunctive relief when … intervening events have eliminated any reasonable anticipation that the aggrieved party will, in the future, be faced with a recurrence of the alleged harm.") (citations omitted).

Here, intervening events have eliminated any purported need to enjoin defendants' conduct. No alleged "threats" hang over plaintiff's head and, nearly five months after plaintiff's Facebook post, no legal action has been brought against him. Plaintiff's suspicion (if any) that defendants may act in the future does not justify the "extraordinary" remedy of an injunction. "It is not enough for a plaintiff to assert that she 'could be' subjected in the future to the effects of an unlawful policy or illegal conduct by a defendant—the prospect of harm must have an 'immediacy and reality.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 16 (1st Cir. 2004) (internal citations omitted). Plaintiff's Motion for a TRO and a PI should be denied.

### C.  PLAINTIFF FAILS TO MEET THE PRELIMINARY INJUNCTION STANDARD AND, THEREFORE, HIS MOTION SHOULD BE DENIED.

#### 1. Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits.

As set forth in defendants' Memorandum of Law in support of their Rule 12(b)(6) Motion, plaintiff's Verified First Amended Complaint fails to state claims against defendants upon which relief can be granted. (ECF Doc. No. 16). Without describing the several grounds for dismissal in detail, a brief description of such grounds is sufficient to illustrate that plaintiff's likelihood of success on the merits is not "substantial" – rather, it is doubtful. First, plaintiff's recording of public school officials conducting administrative business in a secure setting was not protected activity. As the First Circuit has recognized, the right to record government officials may "be subject to reasonable time, place and manner restrictions." Glik v. Cunniffe, 655 F.3d 78, 84 (1st Cir. 2011). See Gericke v. Begin, 753 F.3d 1, 7-8 (1st Cir. 2014). ("Reasonable restrictions on the exercise of the right to film may be imposed when the circumstances justify them.") Here, in light of the nature of the forum, the privacy interests of the officials recorded, the personal purpose for plaintiff's visit to the Administration Office in the first place, and the fact that plaintiff was asked to stop recording (but refused), circumstances justify restricting plaintiff's "right to record." Further, barring the recording of school business activities conducted in the Administration Office (whether open or secret) is a content-neutral restriction of general applicability which serves significant governmental interests – *i.e.*, the day-to-day operation and oversight of eight public schools with an enrollment of over 2,800 students in grades Pre-K through 12.

Second, plaintiffs' posting of his recording on Facebook was not protected activity. The dissemination of information obtained by improper means is protected only if it is on a matter of "public concern." Bartnicki v. Vopper, 532 U.S. 514, 534 (2001). Here, plaintiff visited the Administration Office on purely personal business – to "score five tickets" to his daughter's sold-out Middle School play. In plaintiff's own words, the visit was necessitated by a "ticket snafu," "kind of an unpleasant situation" and "a very small situation." Specifically: "I'm so in the dog

6

house with everyone because I didn't get these tickets for opening night." This is not the stuff of political, social or other concerns to the community. Plaintiff's recording was not on a matter of "public concern."

Third, defendants did not retaliate against plaintiff for engaging in protected activity. The HR Director's letter of March 3, 2022 (which was withdrawn approximately one week later) was no more than a *de minimis* inconvenience to plaintiff's exercise of his First Amendment "rights." It was not an adverse action that would deter a person of "ordinary firmness" from exercising his constitutional rights in the future, especially in light of its prompt withdrawal. Plaintiff himself did not take the letter seriously, nor was his speech ever chilled. Plaintiff declined to remove the Facebook post and promptly doubled down by filing this action four days later.

Fourth, the individual GPS defendants are entitled to qualified immunity. The scope of plaintiff's rights (if any) to record the business of activities of school officials in the GPS Administration Office on the subject of securing opening night tickets to his daughter's Middle School play and to later post such recording on Facebook was not clearly established at the time of defendants' conduct. By asking plaintiff to "turn off" the recording and later instructing plaintiff to remove the posted recording from Facebook, no reasonable official in the position of a GPS administrator would have understood that he or she was violating plaintiff's constitutional rights. While the First Circuit has addressed the recording of police officers performing law enforcement duties in public fora, see Glik, 655 F.3d at 84; Gericke, 753 F.3d at 7-8; Project Veritas Action Fund v. Rollins, 982 F.3d 813, 836-37 (1st Cir. 2020); it has not clarified whether the right to record extends to non-law enforcement personnel (such as school administrators) performing official duties in a limited or non-public forum, nor has it explained the constitutional significance

7

of a government request (such as the one made here) to turn off the recording. Plaintiff simply cannot meet his burden of showing that the defense of qualified immunity does not apply.

Fifth, plaintiff alleges no unconstitutional custom, policy or practice on the part of the City, nor does he allege sufficient facts to show that he was harmed by the City's enforcement of or adherence to an unconstitutional custom, policy or practice. Absent such allegations, the City is entitled to the dismissal of plaintiff's Section 1983 claim. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 665 (1978); City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). Because plaintiff has failed to show a substantial likelihood of success on the merits, injunctive relief must be denied.

### 2. Plaintiff Fails to Show a Significant Risk of Irreparable Harm.

Even if plaintiff demonstrates a substantial likelihood of success on the merits (which defendants deny), he cannot dispense with the second requirement for injunctive relief. "[A]t least some positive showing of irreparable harm must still be made." Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 43 (1st Cir. 2010). Notably, the assertion of First Amendment rights "does not automatically require a finding of irreparable injury." Rushia v. Town of Ashburnham, Mass., 701 F.2d 7, 10 (1st Cir. 1983). See City of Los Angeles v. Lyons, 461 U.S. 95, 112-13 (1983) (constitutional harm is not necessarily irreparable harm). Moreover, a "finding of irreparable harm must be 'grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store.'" City of Lowell v. Enel North America, Inc., 705 F. Supp. 2d 116, 119 (D. Mass. 2010) (quoting Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004)). "The threat must be real and immediate." Id. (motion for preliminary injunction denied absent immediate threat of irreparable harm).

In his Motion for TRO and PI, plaintiff baldly concludes he has shown a "probability of irreparable harm" merely "[b]ecause there is a strong likelihood of success on the merits of [his] claims …." (ECF Doc. No. 2, at 5). As set forth above, plaintiff's success on the merits is far from "likely." More importantly, any future harm to plaintiff is, at best, speculative and remote. Because plaintiff fails to show a significant risk of irreparable harm, his Motion should be denied.

### 3. The Balance of Hardships and the Public Interest Weigh Against an Award of Injunctive Relief to Plaintiff.

As stated above, plaintiff bears the burden of establishing that the four factors of a preliminary injunction weigh in his favor. Esso Std. Oil, 445 F.3d at 18. The standard to be applied is a "stringent" one, requiring a court to carefully weigh the interests on both sides. Rushia, 710 F2d at 10 (citing Doran v. Salem Inc, Inc., 422 U.S. 922, 931 (1975)). Here, where plaintiff's speech is not (and has not been) silenced and where no threat of prosecution or civil proceedings hangs over his head, plaintiff fails to show that the balance of hardships weighs in his favor and/or that his interests outweigh those of defendants. School officials have a legitimate governmental interest in conducting the day-to-day operations of Gloucester Public Schools (portions of which are confidential) without unnecessary disruption or interference. Further, school officials do not lose all privacy interests by virtue of their status as public employees. Certainly, in the confines of the secure Administration Office – where the public admittedly has a right of access to conduct school business – school officials are entitled to some privacy while performing their jobs. See Project Veritas, 982 F.3d at 838 (under certain circumstances, recording of police officers working in public could threaten officers' privacy interests). Plaintiff has failed to make a "clear showing" that he is entitled to the "extraordinary and drastic" relief of a preliminary injunction and, therefore, his Motion should be denied.

### IV. CONCLUSION

For the reasons set forth above, this Honorable Court should deny plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction.

<div style="margin-left: 3em;">

Respectfully submitted,

The Defendants,
SCHOOL COMMITTEE OF GLOUCESTER;
BEN LUMMIS, in his personal capacity;
ROBERTA A. EASON, in her personal capacity; and
STEPHANIE DELISI, in her personal capacity,

By their Attorneys,

**PIERCE DAVIS & PERRITANO** LLP

*/s/ John J. Davis*

_____
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

</div>

Dated: August 29, 2022

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on August 29, 2022.

<div style="margin-left: 3em;">

*/s/ John J. Davis*
_____
John J. Davis, Esq.

</div>