UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INGE BERGE,<br><br>    Plaintiff,<br><br>v.<br><br>SCHOOL COMMITTEE OF GLOUCESTER; BEN LUMMIS, in his personal capacity; ROBERTA A. EASON, in her personal capacity; and STEPHANIE DELISI, in her personal capacity,<br><br>    Defendants. | Civil Action No. 1:22-CV-10346<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**<br><br>**(LEAVE TO FILE GRANTED ON SEPTEMBER 13, 2022)** |

After failing to file a timely response to Plaintiff's Motion for a Temporary Restraining Order and for a Preliminary Injunction, Defendants now assure us that the issue is moot. Defendants are incorrect.

Defendants state that "barring the recording of school business activities conducted in the Administration office (whether open or secret) is a content-neutral restriction of general applicability which serves significant governmental interests." (Defs.' Opp'n to Pl.'s Mot. for TRO and a Prelim. Inj. ("Opp. Mot.") at 6.)  However, there was no such policy at the time this suit was filed, and to this day, it appears that there is no such policy. *See* **Exhibit A**. There was no policy prior to the incident.  There was no policy established after the incident.  There is not even discussion of establishing a policy in the School Committee's meeting minutes.  A government agency can not simply have a "policy" that it makes up out of thin air when it suits them, with the contours that suit them, simply to react to litigation filed against them, and which it keeps a secret except when revealing some of its contours just might help defeat a preliminary injunction.

Defendants claim that Berge alleges "no unconstitutional custom, policy, or practice on the part of the City." (Opp. Mot. at 8.) Defendants sent a letter threatening legal action against Berge to silence him. At a minimum, that is an unconstitutional practice – perhaps a policy – whereby the Defendants conspired to silence Berge for the lawful exercise of his First Amendment Rights. However, this "policy" does not exist, or if it exists, it only exists on an *ad hoc* basis.

Defendants falsely assert that they completely withdrew their threat to take legal action against Berge. (Opp. Mot. at 1-2.) Indeed, the School Committee sent a letter on March 22, 2022, stating that *the School Committee* is withdrawing any threats of criminal action against Berge – however, it says nothing of civil action. Further, the letter is adamant that the School Committee takes the position that *all school buildings* are non-public forums, thus barring his ability to record in school buildings, lest he face further retribution from the School Committee. Berge stands by his position that he can, and should be permitted to, record in public-facing areas on school property.

Additionally, this letter was sent only on behalf of the Gloucester School Committee. ECF 18-1. The three remaining Defendants Lummis, Eason, and Delisi – who took part in writing the letter – and upon whose behalf the original threats were made, have not withdrawn any threats to take legal action against Berge. Defendants admit in their opposition that only the School Committee withdrew its threats to seek to prosecute Berge criminally. (Opp. Mot. at 4). However, at the very least, Ms. Delisi maintains her claims and has refused to issue a similar withdrawal or waiver of claims. Plaintiff pointed this out to opposing counsel on March 22, 2022, and if the individuals were making similar withdrawals, it would have been a simple task to respond "this goes for the individuals as well." *See* ECF 18-2. However, the School

- 3 -

Committee and the individual defendants have stubbornly refused to do so – rendering the motion decidedly not moot.

If these defendants, personally, want to irrevocably waive any criminal or civil claims, perhaps they can moot this injunction request. But, Defendants Lummis, Eason, and Delisi have not done so, not even now in this opposition to the motion for preliminary injunction. Clearly, this shows that they have no intention of withdrawing it, so, at the very least, the injunction must issue against them. Berge does intend to return to conduct First Amendment audits in the Administrative office. In the absence of an injunction, Berge must be concerned that the Defendants will continue to apply an amorphous *ad hoc* "policy" where none exists.

**1.0  The Opposition is Untimely**

Pursuant to L.R. 7.1(b)(2), Defendant had 14 days to file a response in opposition. Defendants failed to file a motion within the 14 days. As a result, pursuant to L.R. 7.1(b)(3), Defendants were required to obtain leave from this Court before submitting an untimely opposition motion. Therefore, this court should strike Defendants' opposition motion.

There is no good cause to extend the time for Defendants to file an untimely opposition motion. *See* Fed. R. Civ. P. 6(b)(1)(B). Defendants inexcusably neglected to file an opposition motion until prompted by Plaintiff's Notice of Non-Opposition requesting this Court to grant its motion. ECF 22. Defendants failed to provide any argument for why their failure to oppose timely was "excusable neglect."

Defendants' justification for failing to timely file an opposition motion is that they thought the issue was moot. Of course, the government thinks everything is moot, and that as long as they violate the Constitution and then say "just kidding," they can continue to do so

without being reined in by the Courts. Maybe it is time for a Court to inform them that this is not how it works.

Defendants argue that government employees unconstitutionally threatening a member of the public with legal action for exercising his First Amendment Rights is inconsequential. Defendants argue that there "was no more than a *de minimis* inconvenience to plaintiff's exercise of his First Amendment 'rights'," (Opp. Mot. at 7.), when they retaliated against an immigrant (unfamiliar with American law, who speaks English as a second language) by threatening to prosecute him, criminally, for exercising his constitutionally protected First Amendment Rights. Mr. Berge was fearful of the consequences of facing a government agency, bent on putting him in jail if he did not stop publishing his video, so he retained counsel. The fact that this counsel may have comforted him that the government was acting ignobly and illegally does not make the violation any less grave.

Defendants' position on the tardiness of their response makes no sense. Defendants acknowledge in their opposition motion that only one Defendant withdrew the threat of legal action. (Opp. Mot. at 4.) Plaintiff's counsel put Defendants on notice, in writing, that only one Defendant withdrew their threat of legal action, and asked for clarification. ECF 18-2. By Defendants' own admission, their justification for submitting an untimely opposition motion is false.

### 2.0 Injunctive Relief is Not Moot

Defendants argue that the issue is moot based on unilateral action taken by the School Committee to withdraw its legal threat. (Opp. Mot. at 4) However, Defendants Lummis, Eason, and Delisi have not withdrawn their threats despite being on notice that they should do so as far back as March 22, 2022. ECF 18-2. Defendants admit this. (Opp. Mot. at 4) Berge

intends to conduct First Amendment audits in the Administrative office. In the absence of an injunction, Berge must be concerned that the Defendants will continue to apply an amorphous *ad hoc* "policy" where none exists and have the threat of legal action by Defendants hanging over his head. Therefore, the request for injunctive relief is not moot.

Assuming *arguendo*, if the mootness doctrine applies, then the voluntary cessation doctrine as an exception to the mootness doctrine applies as well. *O'Connor v. Washburn University*, 416 F.3d 1216, 1221 (10th Cir. 2005) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case unless defendants can show no reasonable expectation that the wrong will recur.") (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953)). Defendants have not met their burden. With respect to the voluntary cessation doctrine, a court in this District recently summarized its continuing applicability as follows:

> "[T]his exception arises in situations where 'the defendant voluntarily ceases the challenged practice[.]'" [*ACLU of Mass. V. United States Conference of Catholic Bishops*, 705 F.3d 44, 54 (1st Cir. 2013)] (quoting *DHL Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 55 (1st Cir. 1999)). The district court has explained that, "[w]hen a defendant voluntarily ceases committing the offending activity, courts impose additional requirements upon [the defendant] in order to ensure that [it] is not 'temporarily alter[ing] questionable behavior' in order to evade judicial review." [*KG Urban Enters., LLC v. Patrick*, 969 F. Supp. 2d 52, 56 (D. Mass. 2013)] (citing *Catholic Bishops*, 705 F.3d at 54). "[D]efendants bear the formidable burden of demonstrating that it is absolutely clear that the challenged conduct could not reasonably be expected to recur." *Id.* at 57 (internal citations omitted).

*Nat'l Fed'n of the Blind v. Container Store Grp., Inc.*, Civil Action No. 15-12984-NMG, 2020 U.S. Dist. LEXIS 149656, at *23-24 (D. Mass. June 24, 2020).

Defendants rely on *Harris v. Univ. of Mass. Lowell*, No. 21-1770, 2022 U.S. App. LEXIS 21586 (1st Cir. Aug. 4, 2022). In *Harris*, two students were challenging a vaccine policy at a university and were no longer attending the university by the time the case was reviewed on appeal. *Id.* at *5. The First Circuit held the case was moot because the students

no longer attended the school where they were challenging the vaccination policies. *Id.* at *7. *Harris* is inapposite to Berge. In *Harris*, the case was moot because the plaintiffs removed themselves from the policy by their actions, rendering the voluntary cessation doctrine inapplicable and not raised.

Here, Berge has not removed himself from Defendants' *ad hoc*, amorphous "policy." Berge intends to continue filming in the Administrative office. The School Committee's unilateral action of withdrawing its threat of taking legal action, this time, as an attempt to evade judicial review does not meet Defendants' burden of showing that their unconstitutional conduct will cease. *Am. Civil Liberties Union of Mass. V. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 54 (1st Cir. 2013) ("[T]his exception arises in situations where "the defendant voluntary ceases the challenged practice[.]")

The issues presented to this Court are live as Berge intends to continue his constitutionally protected conduct. The half-measure actions by Defendants have not evaded the case and controversy. With school starting again and the Defendants having no official policy in place against recording in the administrative office, Berge must contend with the threat of legal action as he engages in constitutionally protected First Amendment audits.

### 2.1 Plaintiff is Likely to Prevail on the Merits

Defendants proceed to attempt to argue that Berge fails to show a substantial likelihood of success on the merits. First, Defendants argue the right to record government officials may be subject to reasonable time, place and manner restrictions. (Mott. Opp. at 6.) This argument is disingenuous because there was no policy that prohibited or even limited recording in the administrative building. **Exhibit A** at 1. The government does not get to just invent a policy out of thin air. *Child Evangelism v. Montgomery Schools*, 457 F.3d 376, 386 (4th Cir. 2006)

("Thus, there is broad agreement that, even in limited public and nonpublic forums, investing governmental officials with boundless discretion over access to the forum violates the First Amendment.") (collecting cases). Defendants falsely assert that Berge was recording in a "secure setting" without any evidence whatsoever. (Opp. Mot. at 6.) If this was a "secure setting" then how did Berge simply walk into that "secure setting?" This was not Strategic Air Command. Why the Defendants are so comfortable simply making up facts is unclear.

Second, Defendants argue that Berge posting the video on Facebook was not protected activity. (Opp. Mot. at 6) Then what is the crux of their mootness argument? Is it that Mr. Berge violated some as-yet-un-cited law or new "policy" that the Committee has kept secret? Is it that they could take legal action, but for now they have withdrawn the threat? That the remaining defendants have not withdrawn anything, and Mr. Berge has no right to publish the video, and they expect this Court to infer mootness? Defendants' opposition makes no sense at all.

As outlined in greater detail in Plaintiff's Opposition to the Motion to Dismiss, Defendants incorrectly apply *Bartnicki v. Vopper*, 532 U.S. 514, 534 (2001) to argue that posting a video on Facebook was not protected activity. *Compare* Opp. Mot. at 6 *with* ECF 18 at 9-12. For *Bartniciki* to apply, the video must be acquired by improper means. Defendants do not suggest how Berge acquired the video by improper means, nor could they. Presumably, Defendants argue that there was a policy prohibiting recording but, as highlighted above, there was no policy prohibiting recording at all. *See* **Exhibit A**. Perhaps if the Defendants could bear the loss to their pride by simply admitting that Berge had a First Amendment right to publish the video, they could move a bit further toward mootness, but as long as that stubbornness remains intact, this Court has work to do.

Third, Defendants argue that government officials threatening legal action against Berge for exercising his First Amendment rights was *de minimis* and would not deter a person of ordinary firmness from exercising his constitutional rights. (Opp. Mot. at 7.) Defendants contend that since Berge did not take down the video and submit to the government's attempt to coerce him into silence that he did not take their threat seriously. How much more seriously did he need to take it than to retain counsel to defend himself against the threat of **criminal prosecution** lodged by a government agency and government employees on government letterhead? Berge filed suit to protect himself from these threats. Had he failed to do so, is the Government conceding that it just sends legal threats on official letterhead for the fun of it? Is the Government conceding that it just threatens citizens with criminal prosecution, without any intent to follow through, so citizens should not take them seriously? For a layperson, why should they presume that such a threat is of any less effect than a restraining order from a court? It is hard to see how much more seriously Berge could have taken the Government's threat. The Government can not seriously argue that Berge's failure to comply (once protected by counsel) renders their conduct "no big deal."

Fourth, Defendants argue that qualified immunity may shield them from liability. This argument is inapplicable in a motion for injunctive relief because qualified immunity does not apply to injunctive relief. *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 732 (9th Cir. 2022) ("Thus, a plaintiff seeking injunctive relief for an ongoing First Amendment violation (e.g., a retaliatory policy) may sue individual board members of a public school system in their official capacities to correct the violation."); *see also Quern v. Jordan*, 440 U.S. 332, 337 (1979).

Fifth, Defendants argue that no "unconstitutional custom, policy or practice on the part of the City" was alleged. Plaintiff clearly identifies an unconstitutional practice. Defendants conspired to send a letter threatening legal action against Berge for exercising his First Amendment rights as an effort to silence him. That is an unconstitutional practice by Defendants.

### 3.0 CONCLUSION

For the foregoing reasons, this Honorable Court should enter a preliminary injunction against all Defendants preventing them from threatening or attempting to coerce Berge into exercising his First Amendment Rights and removing his First Amendment protected speech.

Dated: September 13, 2022.  Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
Robert J. Morris II (*pro hac vice*)
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

*Attorneys for Plaintiff
Inge Berge*

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza