UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INGE BERGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SCHOOL COMMITTEE OF GLOUCESTER, | ) Case No. 22-CV-10346-AK |
| | ) |
| BEN LUMMIS, in his personal capacity; | ) |
| | ) |
| ROBERTA A. EASON, in her personal capacity; | ) |
| | ) |
| STEPHANIE DELISI, in her personal capacity; | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**A. KELLEY, D.J.**

Plaintiff Inge Berge (hereinafter "Plaintiff"), a citizen of Gloucester, Massachusetts, brings this action pursuant to 42 U.S.C. § 1983 against the School Committee of Gloucester (hereinafter "the Committee"); as well as Ben Lummis (hereinafter "Lummis"), Superintendent of Gloucester Public Schools; Roberta A. Eason (hereinafter "Eason"), Human Resources Director of Gloucester Public Schools; and Stephanie Delisi (hereinafter "Delisi"), Executive Secretary of Gloucester Public Schools; each in their individual capacities. Plaintiff alleges that the defendants retaliated against him in violation of his First Amendment right to freedom of speech. Plaintiff filed his initial complaint [Dkt. 1], which he timely amended [Dkt. 11 ("Am. Compl.")], requesting, among other things, that the Court award him damages related to defendants' alleged violation of his First Amendment right to record and publish a video he

1

created and subsequently posted to Facebook. [Id. at ¶¶ 30, 58]. He also requests declaratory relief related to Mass. Gen. Laws ch. 272 § 99 (hereinafter "Massachusetts Wiretap Statute") and 28 U.S.C. § 1282 (hereinafter "FERPA") [id. at ¶¶ 48, 56]. Pending before the Court are Plaintiff's motion for a temporary restraining order [Dkt. 2], which defendants oppose [Dkt. 23], defendants' motion to dismiss [Dkt. 15], which Plaintiff opposes [Dkt. 18], and defendants' motion for extension of time to file their opposition to Plaintiffs' motion for a temporary restraining order and preliminary injunction [Dkt. 23], which Plaintiff opposes [Dkt. 29, 30]. For the reasons set forth below, the Court **GRANTS** the defendant's motion to dismiss [Dkt. 15], **DENIES AS MOOT** Plaintiff's motion for temporary restraining order and preliminary injunction [Dkt. 2], and **DENIES AS MOOT** defendant's motion for extension of time to file opposition to Plaintiff's motion for a temporary restraining order and a preliminary injunction [Dkt. 27].

I.   BACKGROUND

Unless otherwise noted, the facts here are recited as alleged in Plaintiff's Verified First Amended Complaint. [See generally Am. Compl.]. Plaintiff "is a citizen journalist residing in Gloucester, Massachusetts who publicly discusses Massachusetts and local governments' COVID-19 restrictions and other political issues." [Id. at ¶ 7]. On March 3, 2022, Plaintiff visited the Administrative Offices for Gloucester Public Schools to speak with and record his interactions with defendant Lummis regarding the district's policy of "limited seating capacity at school events" as part of the district's continued efforts to mitigate the effects of the COVID-19 pandemic, which was "making it difficult to purchase tickets for him to attend his daughter's middle school play." [Id. at ¶ 8]. The Administrative Office building is accessible to the general

public. [Id. at ¶ 9]. When Plaintiff entered the building, there was no "indication that video recording or photography was restricted." [Id. at ¶ 10]. While filming, Plaintiff "held his camera out in the open," and "verbally confirmed that he was filming." [Id. at ¶ 11]. After entering, Plaintiff "was directed to [defendant Delisi] and began to speak with her. He began this conversation by stating 'I'm filming this, I'm doing a story on it.'" [Id. at ¶ 12].

Plaintiff's Verified First Amended Complaint stated, "[a]t no point did anyone inform Mr. Berge that filming was not permitted, although two individuals did protest that they did not personally wish to be filmed. These individuals then retreated to private office areas, and were not filmed after that point." [Id. at ¶ 13]. However, Plaintiff's video shows defendant Lummis asking Plaintiff, "Can you turn that off, sir?" followed by the instruction, "You do not… You don't have permission to film in this, in this area." See Inge Berge, FACEBOOK (Mar. 3, 2022, 1:37 PM), https://www.facebook.com/inge.berge.9/videos/1571702173204109 (hereinafter "Recording"). Plaintiff was then approached by Gregg Bach, the Assistant Superintendent of Teaching and Learning, who spoke with him regarding Plaintiff's "attempt to attend his daughter's play," while Plaintiff filmed. [Am. Compl. at ¶ 14]. After a short conversation, Plaintiff left the building. [See id.] Later that day, at 1:37 PM, Plaintiff "uploaded his recording of the above encounter to his publicly accessible Facebook page" and added "commentary." [Id. at ¶ 15; see also Recording]. Plaintiff later "received a letter from Gloucester Public Schools signed by Roberta A. Eason, its Director of Human Resources," that alleged Plaintiff was in violation of the Massachusetts Wiretap Statute because he recorded his conversation with Delisi without her consent and uploaded the video to Facebook. [Am. Compl. at ¶ 16]. The letter demanded that Plaintiff "immediately remove the post from [his] Facebook account and/or any

other communications to prevent the pursuit of legal (sic) in this matter." [Id. at ¶ 17.] The letter did not specify what form that legal action would take. [See id. at ¶ 21.]

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court is generally limited to "the complaint, documents attached to it, and documents expressly incorporated into it." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014).

## III. DISCUSSION

Plaintiff claims that pursuant to 42 U.S.C. § 1983, he had a First Amendment right to record and publish the Recording [see Am. Compl. at ¶ 30], which defendants violated when

4

they allegedly retaliated against him for protected activity within the scope of those rights [see id. at ¶ 32]. He seeks declaratory relief from this Court stating that his actions did not violate the Massachusetts Wiretap Statute or FERPA. Section 1983 provides that "[e]very person" acting "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia" who subjects or causes to subject someone "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the injured party. 42 U.S.C. § 1983. An individual asserting a Section 1983 claim must show that the challenged conduct is "attributable to a person acting under color of state law" and that the conduct was a "denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997); see Graham v. Connor, 490 U.S. 386, 393-94 (1989) (citation omitted) (explaining that Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred").

### a. Defendants' Motion to Dismiss

Defendants argue that Plaintiff fails to state claims upon which relief may be granted. [See Dkt. 16 at 2]. Alternatively, defendants argue that Plaintiff's act of recording is not protected by the First Amendment; that "because the recording did not involve a 'matter of public concern,' [his] posting on Facebook was likewise unprotected," [id. at 3]; that "defendants did not retaliate against plaintiff for engaging in protected activity," [id.]; that defendants "are entitled to qualified immunity," [id.]; that Plaintiff failed "to state a claim of municipal liability against the Gloucester School Committee," [id.]; and finally, that "because plaintiff fails to state claims under Section 1983, his demands for declaratory relief under the Massachusetts Wiretap Statute and FERPA are moot," [id.]. Conversely, Plaintiff argues that because he had a First Amendment right to both record and publish the video, defendants illegally retaliated against him

5

for engaging in protected activity.  He further argues that the individual defendants are not entitled to qualified immunity, that the Gloucester School Committee is liable, and that his claims for declaratory relief related to the Massachusetts Wiretap Statute and FERPA are not moot.

### i. Plaintiff's statements regarding a First Amendment right to record

As an initial matter, the Court first untangles Plaintiff's contradictory claims regarding his alleged right to record his video under the First Amendment.  Under Rule 12(b)(6), the Court may "augment . . . facts and inferences" from the complaint "with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  Haley, 657 F.3d at 46.  The Court may also consider "concessions in plaintiff's response to the motion to dismiss."  Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012) (internal quotations omitted).  In light of these instructions, the Court finds that Plaintiff has withdrawn his claim that he had a First Amendment right to record his video.

Plaintiff initially claimed he had a "First Amendment right to record and publish" the conversations he had with defendants on March 3, 2022.  [Am. Compl. at ¶ 30].  However, in an email attached as an exhibit to his opposition to defendants' motion to dismiss, Plaintiff's counsel conceded that Plaintiff is not making any claim regarding a First Amendment right to record.  [See Dkt. 18-2 at 2] (stating "We have accepted, for the sake of peace at this time, your position that there was no First Amendment right to record in that office. (We do disagree, but had not sought your admission of this, *nor do we bring that claim in the amended complaint*).") (emphasis added).  Further, in that same email, Plaintiff's counsel stated that Plaintiff "specifically omitt[ed] a First Amendment right to record in the building" from the operative

6

complaint. [Id.] Regarding Plaintiff's right to record in the Administrative Offices, counsel also stated, "We believe there are other legal reasons that he could do that, but in the interest of compromise, *we backed down from claiming a First Amendment right to record*." [Id.] (emphasis added). Because counsel for Plaintiff has been adamant in negotiations with opposing counsel in asserting that his client was not bringing a claim regarding an alleged First Amendment right to record in the Administrative Offices, the Court dismisses the portions of his claim relating to that professed right.

### ii. Retaliation

Having addressed Plaintiff's alleged First Amendment right to record his video, the Court now turns to his narrowed claim that he had a right to publish it, and that defendants' actions amount to retaliation under the First Amendment. For Plaintiff to establish that he was subjected to First Amendment retaliation under 42 U.S.C. § 1983, he must show that (1) his actions were constitutionally protected, (2) that he was subjected to an adverse action, and (3) that his protected activity was a substantial or motivating factor in that adverse action. See D.B., ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43(1st Cir. 2012). Defendants argue that they did not retaliate against Plaintiff because their actions were *de minimis*, that Plaintiff failed to allege sufficient facts to show that he engaged in constitutionally protected activity, and that Plaintiff failed to show that he was subjected to an adverse action. They also argue that the individual defendants, Lummis, Delisi, and Eason, are protected by the doctrine of qualified immunity. Plaintiff argues that Defendant's March 3, 2022, demand letter was an adverse action against him that was greater than *de minimis*, and that the individual defendants are not entitled to qualified immunity because Plaintiff's right to publish his video was clearly established.[1]

---

[1] In a footnote, Plaintiff appears to seek this Court's leave to amend his First Verified Amended Complaint. [See Dkt. 18 at 16, n. 7] ("Although the individual defendants were named in their personal capacities, to the extent

7

1. **Qualified immunity**

Defendants argue that defendants Lummis, Delisi, and Eason are entitled to qualified immunity. [Dkt. 16 at 15]. Qualified immunity provides that "government officials performing discretionary functions" are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Floyd v. Farrell, 765 F.2d 1, 4 (1st Cir. 1985) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Court must decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009)). To answer the second question, the Court must evaluate whether the law was "sufficiently clear" such that "every reasonable official would understand that what he is doing is unlawful." Eves v. LePage, 927 F.3d 575, 583 (1st Cir. 2019) (citation and internal quotation marks omitted). In other words, immunity "exists even where the abstract 'right' invoked by the plaintiff is well-established, so long as the official could reasonably have believed 'on the facts' that no violation existed." Dirrane v. Brookline Police Dep't., 315 F.3d 65, 69 (1st Cir. 2002) (citations omitted). Subjective intent is irrelevant to a qualified immunity defense. See Abreau-Guzman v. Ford, 241 F.3d 69, 73 (1st Cir. 2001) (citing Crawford-El v. Britton, 523 U.S.574, 588 (1998)). Courts need not follow the two-step analysis sequentially. Maldonado, 568 F.3d at 270.

---

necessary, Plaintiff would seek leave to amend to name them in their official capacities as well. This failure was an error, not a willful omission."). Plaintiff's request is improperly made, untimely and fails to state sufficient factual or legal support that would allow the Court to determine whether justice so requires such an amendment.

The Court begins at the second prong of the qualified immunity analysis.  Though Plaintiff argues "[t]he right to publish without government interference under the First Amendment is clearly established, long-cherished, and jealously guarded" [Dkt. 18 at 16], the Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'"  District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018) (quoting Plumhoff v. Rickard, 572 U.S. 765, 779 (2014)).  Instead, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." Reichle v. Howards, 566 U.S. 658, 665 (2012) (internal quotations marks and citations omitted).  "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law."  White v. Pauly, 137 S. Ct. 548, 551 (2017) (internal quotation marks omitted).

Under these demanding standards, Plaintiff's arguments that the individual defendants should not be afforded qualified immunity fail.  None of the cases Plaintiff cites shows an established rule relevant to the particular facts of this case, let alone one that places "the statutory or constitutional question beyond debate."  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).  To the contrary, Plaintiff's cited passages are inapplicable to the facts of this case, especially considering the Supreme Court's instruction that "[i]t is not enough that the rule is suggested by then-existing precedent."  Wesby, 138 S. Ct. at 590 ("The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.").

Here, Plaintiff has "not cited any cases of controlling authority in [this] jurisdiction at the time in question which clearly established the rule on which [he] seek[s] to rely, nor [has he]

9

identified a consensus of cases of persuasive authority such that a reasonable [official] could not have believed that his actions were lawful." Wilson v. Layne, 526 U.S. 603, 604 (1999). To support his argument, Plaintiff cites Kleindienst v. Mandel, 408 U.S. 753, 771 (1972) (Douglas, J., dissenting) ("The First Amendment involves not only the right to speak and publish but also the right to hear, to learn, to know"); Branzburg v. Hayes, 408 U.S. 665, 727 (1972) (Stewart, J., dissenting) ("the right to publish is central to the First Amendment and basic to the existence of constitutional democracy"); Red Linon Broadcasting Co., Inc. v. F.C.C., 395 U.S. 367, 390 (1969) ("It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas…. It is the right of the public to receive suitable access to social, political, esthetic, moral and other ideas and experiences."); and McMillan v. Carlson, 369 F. Supp. 1182, 1185 (D. Mass 1973) ("The right to publish is firmly embedded in the First Amendment and is central to the constitutional guarantee of free speech and a free press."). [Dkt. 18 at 16]. The Court analyzes each of these cases in turn.

The Mandel Court addressed the question of whether the Attorney General's "action in refusing to allow an alien scholar to enter the country to attend academic meetings violate[d] the First Amendment rights of American scholars and students who had invited him." 408 U.S. at 754. Far from meeting the burden of showing "controlling authority in their jurisdiction at the time in question," the language from Mandel that Plaintiff cites is not taken from the precedential majority opinion, but from Justice Douglas' dissent. Wilson, 526 U.S. at 604; see Mandel, 408 U.S. at 771 (Douglas, J., dissenting). In fact, the Mandel Court did not even address the First Amendment rights of those scholars and students. Mandel, 408 U.S. at 770 (majority op.) ("What First Amendment or other grounds may be available for attacking exercise of discretion

for which no justification whatsoever is advanced is a question we neither address or decide in this case").

Likewise, Plaintiff's cited language from Branzburg is also taken from a dissent, not a controlling authority. See 408 U.S. at 727 (Stewart, J., dissenting). Branzburg was a case about "whether requiring newsmen to appear and testify before state or federal grand juries abridges [their] freedom of speech." Id. at 667 (majority op.). The Branzburg Court's clear language in framing the issue in that case distinguishes itself from Plaintiff's case here: "But these cases involve no intrusions upon speech or assembly, *no prior restraint or restriction on what the press may publish*, and no express or implied command that the press publish what it prefers to withhold." Id. at 681 (emphasis added).

Plaintiff also cites Red Linon Broadcasting, 395 U.S. at 390, as applicable. However, that case involved a challenge to the "constitutional and statutory bases of the [fairness] doctrine and component rules," not a question of whether or not an individual's right to publish was infringed. Id. at 370–71. The "fairness doctrine" refers to the F.C.C.'s "requirement that discussion of public issues be presented on broadcast stations, and that each side of those issues be given fair coverage." Id. at 370. While both Plaintiff's claims and the fairness doctrine do involve the First Amendment, these two cases are not similar in any cognizable way.

Finally, Plaintiff also relies on McMillan, 369 F. Supp. at 1188. Here, Plaintiff finds a case which tracks at least somewhat closer to the issue in his case, though not close enough to have his desired effect. There, the plaintiff George McMillan sought declaratory and injunctive relief regarding his denied request to interview an inmate at the United States Penitentiary at Leavenworth, Kansas for the purpose of writing a biography. See id. at 1184. Far from being a case that established the breadth of the public's right to publish under the First Amendment

beyond all doubt, the McMillan court held that the Bureau of Prisons' "total ban policy of personal interviews of an inmate by an author is an invalid restriction of First Amendment rights of freedom of speech." Id. at 1188. As is the case with the other decisions referenced by Plaintiff, the two situations are easily distinguishable. Id.

Taken holistically, Plaintiff's attempts to show that his right to publish his video was clearly established present a picture more akin to a lackadaisical attempt to cite cases that mention the First Amendment somewhere within the document; none of those cases presents a precedent even vaguely applicable to the facts here, let alone a rule where "every reasonable official would understand that what [they were] doing [was] unlawful." Eves, 927 F.3d at 583. At best, they constitute the kind of generality that the Supreme Court has "repeatedly told courts" they should not engage in, by overreaching to "define clearly established law." Plumhoff, 572 U.S. at 779. Accordingly, because Plaintiff has failed to meet his burden to show that the individual defendants' conduct violated any clearly established right, the Court finds that defendants Lummis, Delisi, and Eason are entitled to the protection of qualified immunity. As such, Count I of Plaintiff's claim against these individual defendants is dismissed.[2]

### iii. Withdrawal of the demand letter

Defendants argue that because they withdrew the March 3, 2022, letter, Plaintiff's claims for declaratory relief under the Massachusetts Wiretap Statute and FERPA (Counts II and III) are moot. [Dkt. 16 at 18]. For his part, Plaintiff disputes that defendants' withdrawal of the March

---

[2] The Court notes Plaintiff's arguments that, "[t]o the extent possible, Plaintiff challenges the intertwined doctrines of Monell and qualified immunity." [Dkt. 18 at 15, n. 6]. Since this case, however, is not about whether or not the qualified immunity doctrine and Monell are good law, a fact that Plaintiff alludes to when he "recognizes that this Court must follow these doctrines until the Supreme Court reconsiders its approach," the Court declines to address this argument. [Id.]

12

3, 2022, letter applied to all defendants, instead alleging that the letter applied only to the Committee, and therefore Counts II and III, at least against the individual defendants, should remain. [Dkt. 18 at 18]. "Mootness is a jurisdictional defect, rooted in Article III case or controversy considerations." Horizon Bank & Tr. Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004) (citing United States v. Reid, 369 F.3d 619, 624 (1st Cir.2004)); see also Matt v. HSBC Bank USA, N.A., 783 F.3d 368, 372 (1st Cir. 2015). For an Article III court to have jurisdiction, "an actual controversy" must exist "at all stages of review, not merely at the time the complaint is filed." Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974). "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (per curiam) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)) (internal quotation marks omitted). In other words, a case is moot if a court "may not provide any effectual relief to the potentially prevailing party." Matt, 783 F.3d at 372 (quoting Horizon Bank & Tr. Co., 391 F.3d at 53) (internal quotation marks omitted). Where a matter is moot, "dismissal of the action is compulsory." Redfern v. Napolitano, 727 F.3d 77, 83–84 (1st Cir. 2013) (quoting Maher v. Hyde, 272 F.3d 83, 86 (1st Cir. 2001)).

Here, it is clear that counsel for the defendants—all of them—intended to withdraw the letter sent to Plaintiff on March 3, 2022. [See Dkt. 18-1]. In her letter to Plaintiff's counsel on March 22, 2022, counsel for the defendants stated, "I informed you on March 11, 2022 on a conference call . . . that the District would be withdrawing the letter to Mr. Berge dated March 3, 2022." [Id.] She further clarified, "Please accept this as written notice that the letter dated March 3, 2022 *has been revoked*."" [Id.] (emphasis added). The Court finds no merit to

Plaintiff's argument that "the letter was only withdrawn on the part of one defendant." [Dkt. 18 at 18]. The March 22, 2022, letter sent by defendants' counsel stated that the March 3, 2022, letter was *revoked*, not that only the school committee had disavowed it. [Dkt. 18-1]. Absent the presence of the threat of legal action within that letter, there remains no live controversy, and subsequently, no availability for the Court to grant relief, thereby rendering Plaintiff's claims moot.[3]

Both parties have set forth arguments on the voluntary cessation doctrine. [See Dkt. 16 at 19; Dkt. 18 at 19]. Similarly, this doctrine does not aid plaintiff with a prevailing argument. The voluntary cessation doctrine "can apply when a defendant voluntarily ceases the challenged practice in order to moot the plaintiff's case and there exists a reasonable expectation that the challenged conduct will be repeated after the suit's dismissal." Boston Bit Labs, Inc. v. Baker, 11 F.4th 3, 9 (1st Cir. 2021) (internal quotation marks and citations omitted). The voluntary cessation doctrine exists primarily to deter a "manipulative litigant from immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." Town of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 59 (1st Cir. 2016)

The Court is unconvinced that the voluntary cessation doctrine applies here. First, as conceded by the Plaintiff, the gist of defendants' March 3 letter was a legal threat "that he would be prosecuted if he did not cease **publication** of the video." [Dkt. 18-2] (emphasis in original). The publication has already occurred, and defendants have agreed to take no further action. Plaintiff conceded, through counsel, that he agreed the district will "take no further action," so

---

[3] Plaintiff claims that defendants' argument "that the withdrawal of the Demand Letter renders the complaint moot" converts the motion into one for summary judgment. [Dkt. 18 at 18, n.8]. Because Plaintiff conceded in his opposition that the letter was indeed withdrawn—at least regarding the Committee—the Court declines to convert the motion into one for summary judgment. [Dkt. 18 at 18]. Given the context and wording of the letter in the exhibit provided by Plaintiff himself, the Court finds that the letter was withdrawn in its entirety. [See Dkt. 18-1]. at 2].

14

the Court finds little chance (let alone any reasonable one) that the district would, after the dismissal of this case, send a subsequent demand letter to reignite this controversy.  [Dkt. 18-2]. Further, because Plaintiff has conceded that he has no First Amendment right to record in the Administrative Office for Gloucester Public Schools, the possibility that this entire situation will be repeated after dismissal is also remote.  Though Plaintiff claims he intends to return to conduct First Amendment audits in the Administrative office, unless Plaintiff decides to forego his own stance that he does not have a First Amendment right to record videos in those offices, there is no reasonable expectation that Defendants will seek to enjoin further publications by Plaintiff after dismissal.  In light of these findings, and because "the voluntary cessation exception can be triggered *only* when there is a reasonable expectation that the challenged conduct will be repeated following dismissal of the case," that exception does not apply here. ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 56 (1st Cir. 2013).  It therefore follows that because defendants' withdrawal of the demand letter resulted in the removal of any live controversy here, and the voluntary cessation exception does not apply, the Court dismisses the remainder of Plaintiff's claims against all defendants.

## IV.  CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss [Dkt. 15] is **GRANTED**. In accordance with that ruling, Plaintiff's motion for temporary restraining order and preliminary injunction [Dkt. 2] is **DENIED AS MOOT**. Likewise, Defendants' motion to extend time to file opposition to Plaintiff's motion for a temporary restraining order and preliminary injunction [Dkt. 27] is **DENIED AS MOOT**.

**SO ORDERED.**

Dated: December 5, 2022                              /s/ Angel Kelley
                                                     Hon. Angel Kelley
                                                     United States District Judge